COMMONWEALTH vs. MORRIS M., a juvenile.

No. 06-P-1450.

Essex. September 21, 2007. - November 9, 2007.

Present: GRASSO, McHUGH, & MEADE, JJ.

*Practice, Criminal,* Juvenile delinquency proceeding. *Evidence,* Juvenile delinquency. *Malicious Injury to Property. Motor Vehicle,* Permission to operate. *Necessity. Restitution.*

At the trial of a complaint charging the juvenile with delinquency by reason of malicious destruction of personal property valued over $250 in violation of G. L. c. 266, § 127, the evidence did not support the inference that the juvenile's intentional acts were done out of cruelty, hostility, or revenge, rather than heedlessly and in reckless disregard of the rights of others. [690-693]

A Juvenile Court judge properly found the juvenile delinquent based on his unauthorized use of a motor vehicle on a golf driving range, where a plain reading of G. L. c. 90C, § 24(2)(*a*), the statute prohibiting the use of a motor vehicle without authority, demonstrated that driving on a public way was not an element of the crime [693-696]; further, the judge correctly denied the juvenile's motion for a required finding of not delinquent, where the juvenile had not acted out of necessity in using the vehicle without authority, in that he had legal alternatives to abate the danger he faced, but did not pursue them [696-697].

At a juvenile's restitution hearing, there was no risk of a miscarriage of justice as a result of the admission in evidence of reliable hearsay or because of the judge's order, which made the payment of restitution a condition of probation. [697-698]

COMPLAINTS received and sworn to in the Essex County Division of the Juvenile Court Department on January 23, 2004.

The cases were tried before *Michael F. Edgerton,* J., and a restitution hearing was held before *Mark Newman,* J.

*Jennifer J. Cox* for the juvenile.

*Linda A. Wagner,* Assistant District Attorney (*James A. Steinberg,* Assistant District Attorney, with her) for the Commonwealth.

MEADE, J. In 2004, complaints issued against the juvenile,

charging him with delinquency by reason of two counts of malicious destruction of personal property valued over $250 in violation of G. L. c. 266, § 127,[1] and one count of use of a motor vehicle without authority in violation of G. L. c. 90, § 24(2)(*a*). Following a jury-waived trial in the Juvenile Court, the trial judge found the juvenile delinquent as to all charges and sentenced him to six months' probation. After an evidentiary hearing on another date before a different judge, the juvenile was ordered to pay restitution in the amount of $2,649. On appeal, the juvenile raises the following claims: (1) the evidence supporting the malicious destruction of property charges was insufficient, where the Commonwealth failed to prove that he acted with malice; (2) the evidence supporting the use of a motor vehicle without authority charge was insufficient, where the Commonwealth failed to prove that he operated on a public way; (3) the Commonwealth failed to prove that he did not act out of necessity; (4) the restitution judge improperly admitted an exhibit at his restitution hearing; and (5) the restitution judge failed to consider the juvenile's ability to pay the ordered restitution. We affirm in part and reverse in part.

1. *Facts.* a. *The crimes.* On December 31, 2003, Susan Beaudin permitted her son Ryan to use her 1989 Jeep Cherokee (Jeep) to attend a New Year's Eve party. Ryan was the only person authorized to use the Jeep. Just after midnight, Ryan left the party with some friends, including the juvenile, to go home. After he dropped off one of the passengers at her home, Ryan and the others learned, as a result of some cellular telephone calls, that an individual named Sean was looking for the juvenile. Sean had a history of problems with the juvenile.

To avoid bringing any problems to the juvenile's house, Ryan drove to the Whirlaway Golf Center on Route 110 in Methuen, which was near the juvenile's house. Approximately one minute after Ryan pulled the Jeep into the parking lot, another car pulled in next to the Jeep. This car contained five youths, including Sean, who requested that the Jeep's doors be unlocked to allow them entry and access to the juvenile.

When Sean gained entry through a back door, the juvenile

---

[1]The first count referenced a "1989 Jeep Cherokee," and the second count referenced "fence and turf."

began swinging around an "eightball" he had wrapped inside a handkerchief. In the course of this action, the juvenile "smashed" out the Jeep's back left window with the makeshift weapon. Alarmed by the damage, Ryan and another boy jumped out of the Jeep, but Ryan's girlfriend, Melanie, remained in the front seat.

The juvenile then moved into the driver's seat, "hit the gas," drove across the parking lot, and crashed through a chain link fence onto the driving range grass. The juvenile continued driving on the driving range while Melanie and Sean screamed at him to stop. In her own effort to stop the Jeep, Melanie pulled the emergency brake, which stopped the Jeep long enough for her to jump out. The juvenile continued to drive in circles until he collided with a utility pole in the middle of the driving range. Upon colliding with the pole, the juvenile left the Jeep and ran to his nearby home. The Jeep left behind was seriously damaged and inoperable. The front end was smashed in, the undercarriage was damaged, and it had to be towed away.

b. *The restitution hearing.* At a separate restitution hearing, Beaudin testified as to the estimated cost for the repair to her Jeep. A damage estimate by her insurance company, which totaled $2,649, was admitted as an exhibit.[2] Due to the expense, she had not insured the Jeep with collision coverage. There was too much damage to repair, and the Jeep was deemed a "total loss." The Jeep was retired to the junkyard.

At the hearing, the juvenile's father testified that he had seen Ryan driving the Jeep after the incident. The restitution judge made no inquiry relative to the juvenile's ability to pay the restitution. The matter was not argued and no evidence was offered on the subject. Payment of the restitution was made a condition of the juvenile's probation.

2. *Discussion.* a. *Sufficiency of the evidence.* The juvenile argues that his delinquency findings are not supported by sufficient evidence. When analyzing whether the record evidence is sufficient to support a delinquency determination, the relevant "question is whether, after viewing the evidence in the light

---

[2]Beaudin had testified at trial to the same estimated amount for the repairs.

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt (emphasis in original)." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 319 (1979).[3]

i. *Malicious destruction of personal property.* When evaluating sufficiency, the evidence must be reviewed with specific reference to the substantive elements of the offense. See *Commonwealth* v. *Latimore, supra* at 677-678. To prove a violation of G. L. c. 266, § 127, as amended by St. 1994, c. 168, § 4, the Commonwealth must prove that the juvenile "destroy[ed] or injure[d] the personal property, dwelling house or building of another . . . ." If the destruction or injury is "wilful and malicious," the permissible penalty is greater than if it is merely "wanton," which is a separate crime requiring different proof. See *Commonwealth* v. *Schuchardt*, 408 Mass. 347, 352 (1990).

Here, the juvenile contends that there was insufficient evidence to support the judge's finding that his actions were "wilful and malicious." We agree. The terms "wilful" and "malicious" represent two distinct elements of the crime, both of which must be proved beyond a reasonable doubt. See *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 443 (1983); *Commonwealth* v. *Redmond*, 53 Mass. App. Ct. 1, 4 (2001); Nolan & Sartorio, Criminal Law § 427, at 438 (2001). "The word 'wilful' means intentional and by design in contrast to that which is thoughtless or accidental. Malice, on the other hand, refers to a state of mind of cruelty, hostility or revenge." Nolan & Sartorio, *supra.*

In the light most favorable to the Commonwealth, the evidence that the juvenile acted wilfully was more than sufficient. He intentionally swung the makeshift eightball weapon inside the Jeep (resulting in the broken window), he took control of the Jeep by design, and he intentionally drove the Jeep through the fence and onto the driving range, damaging them both. Ordinarily, malice may be inferred from the wilful commission of an unlawful act without excuse. See *Commonwealth* v. *Mezzanotti*, 26

---

[3]Because the juvenile did not renew his motion for a required finding of not guilty after he presented his defense, "we limit our sufficiency analysis to the state of the evidence at the close of the Commonwealth's case." *Commonwealth* v. *Sudderth*, 37 Mass. App. Ct. 317, 318 (1994).

Mass. App. Ct. 522, 528 (1988). However, the wilful doing of an unlawful act does not, by itself, suffice to prove malice under G. L. c. 266, § 127. *Commonwealth* v. *Redmond, supra* at 4.[4] In other words, the evidence does not support the inference — there was no direct evidence of malice — that these intentional acts were done out of cruelty, hostility, or revenge.

Contrary to the Commonwealth's argument, the evidence of the juvenile's hostile acts toward Sean, and his conduct in avoidance of Sean and the others, do not equate to destructive acts that were by design hostile to the owner (even if unknown) of the property. *Id.* at 5. See *Commonwealth* v. *Hosman,* 257 Mass. 379, 384-385 (1926). Rather, the evidence demonstrated that the juvenile's conduct was wanton, i.e., the acts he committed were "done heedlessly and in reckless disregard of the rights of others." Nolan & Sartorio, *supra* at 440. See *Commonwealth* v. *Byard,* 200 Mass. 175, 177-178 (1908). However, the juvenile was not charged with wanton destruction of personal property, and it is not a lesser included offense of malicious destruction of property. See *Commonwealth* v. *Schuchardt, supra* at 352; *Commonwealth* v. *Redmond, supra* at 5.

The Commonwealth's reliance on *Commonwealth* v. *Cimino,* 34 Mass. App. Ct. 925 (1993), is misplaced. In *Cimino,* the defendant was convicted of malicious destruction of personal property based on his shooting car windows with a BB gun. *Id.* at 926. What made the shootings malicious and not wanton conduct was the fact that he aimed the gun at the car windows and acted with the principal purpose of causing damage to the windows, i.e., his intended targets. The car windows were not damaged as a result of the defendant's casual or reckless firing of the BB gun. *Ibid.* Here, however, it is not a reasonable inference from the evidence that the juvenile's intended target was the Jeep. Nor may it be reasonably inferred that by design he purposefully destroyed the fence and turf motivated by hostility, cruelty, or vengeance toward their owner as opposed to the

[4]This special variety of malice developed at common law because the wilful doing of an unlawful act without excuse, if applied to injuries to property, would permit an otherwise civil trespass to be punished criminally. See *Commonwealth* v. *Goodwin,* 122 Mass. 19, 35 (1877); *Commonwealth* v. *Peruzzi, supra* at 441; *Commonwealth* v. *Ruddock,* 25 Mass. App. Ct. 508, 512 (1988).

resulting damage being occasioned by, or incidental to, his desire to escape his circumstances. See *Commonwealth* v. *Redmond, supra* at 4-5 (evidence of malicious destruction was insufficient where the destruction of the property was not designed to intimidate or overpower its owner, but rather was an incidental means to carry out the defendant's goal of theft). There being insufficient evidence of malice, the two delinquency findings based on the juvenile's violation of G. L. c. 266, § 127, must be vacated.[5]

ii. *Use of a motor vehicle without authority.* The juvenile further claims that the delinquency finding based on his unauthorized use of the Jeep, which he drove onto the driving range, is invalid where the Commonwealth failed to prove that the driving range was a "public way."[6] The Commonwealth maintains that "public way" is not an element of the crime of use of a motor vehicle without authority. A plain reading of the statute supports the Commonwealth's position. See *Commonwealth* v. *Murphy*, 68 Mass. App. Ct. 152, 154 (2007), quoting from *Commonwealth* v. *Conaghan*, 433 Mass. 105, 110 (2000) (a "statute is to be interpreted according to the plain and ordinary meaning of its words"). See also *Commonwealth* v. *Mandell*, 61 Mass. App. Ct. 526, 528 (2004), quoting from *Pyle* v. *School Comm. of S. Hadley*, 423 Mass. 283, 285 (1996) ("[w]here the language of a statute is clear and unambiguous, it is conclusive as to legislative intent").

---

[5]The second count of malicious destruction, i.e., for the damage done to the "fence and turf," suffers from a separate infirmity not raised by the juvenile. The crimes set out in G. L. c. 266, § 127, only extend to "personal property, dwelling house[s] or building[s]." The turf on a driving range is real, not personal, property and its destruction is not subject to punishment under § 127. Rather, the wilful and malicious or wanton destruction of real property (among other things) is punishable under G. L. c. 266, § 126A. It was therefore impossible as matter of law for the juvenile to be found delinquent for violating § 127 for damaging the turf. Because a finding of delinquency on the second count required conjunctive proof of malicious destruction of the "fence and turf," and the latter was not legally possible, the delinquency finding on this count is invalid.

[6]For the purposes of our discussion of this issue, we use "public way" as shorthand for "any way or in any place to which the public has a right of access, or any place to which members of the public have access as invitees or licensees," which is the actual language found in G. L. c. 90, § 24(2)(*a*), as appearing in St. 1991, c. 460, § 1.

The question we answer today has not been squarely addressed in the past, but the slate on which we write is not entirely blank either. In *Commonwealth* v. *Giannino*, 371 Mass. 700, 703-704 (1977), the Supreme Judicial Court determined that the crime of use of a motor vehicle without authority does not require the prompt delivery of a citation as required by G. L. c. 90C, § 2. In the course of its decision, but not necessary to the holding, the court listed "public way" among the elements constituting use without authority. *Id.* at 702. The following year, in *Costarelli* v. *Commonwealth*, 374 Mass. 677, 684 n.4 (1978), the court noted that its statement on this issue in the *Giannino* decision was dicta, and specifically left the question open. In *Commonwealth* v. *Moore*, 50 Mass. App. Ct. 730, 734 (2001), citing *Commonwealth* v. *Giannino*, *supra*, this court also set forth "public way" as an element of use without authority. However, as in *Giannino*, this too was dicta, as it was not necessary to our decision, which concluded that the defendant was not authorized to use the vehicle. *Id.* at 734-735.[7]

The relevant portions of § 24(2)(*a*)[8] are separated into two parts through the use of a semicolon. The first portion of the

---

[7] In *Commonwealth* v. *Clancy*, 261 Mass. 345, 348 (1927), the court held that "public way" was an element of use without authority. However, the court was interpreting the 1926 version of the statute, which coupled the unauthorized use with the language "upon any way." St. 1926, c. 253. See *Costarelli* v. *Commonwealth*, 374 Mass. at 684 n.4. Applicable in this case is the 1991 version of § 24(2)(*a*), see St. 1991, c. 460, § 1, which (as we explain, *infra*) no longer grammatically connects the two.

[8] In relevant part, G. L. c. 90, § 24(2)(*a*), as amended by St. 1991, c. 460, § 1, states:

> "Whoever upon any way or in any place to which the public has a right of access, or any place to which members of the public have access as invitees or licensees, operates a motor vehicle recklessly, or operates such a vehicle negligently so that the lives or safety of the public might be endangered, or upon a bet or wager or in a race, or whoever operates a motor vehicle for the purpose of making a record and thereby violates any provision of section seventeen or any regulation under section eighteen, or whoever without stopping and making known his name, residence and the register number of his motor vehicle goes away after knowingly colliding with or otherwise causing injury to any other vehicle or property, or whoever loans or knowingly permits his license or learner's permit to operate motor vehicles to be used by any person, or whoever makes false statements in an application for such a license or learner's permit, or whoever knowingly makes any false

section specifies "public way"[9] as necessary to the proof of operating a motor vehicle recklessly or negligently so as to endanger.[10] Set off by the semicolon is the second portion of the section, which penalizes the use of a motor vehicle without authority. This portion of the section is neither preceded by nor grammatically connected to any requirement that the offense occur on a "public way."[11] The use of a semicolon reflects the independent nature of this separated clause, which may be read as a complete sentence ending with less of a pause than a period would indicate. See *Moulton* v. *Brookline Rent Control Bd.*, 385 Mass. 228, 231-232 (1982); *Commonwealth* v. *George*, 430 Mass. 276, 280 (1999).

Therefore, the "public way" language found in the first por-

---

statement in an application for registration of a motor vehicle, shall be punished by a fine of not less than twenty dollars nor more than two hundred dollars or by imprisonment for not less than two weeks nor more than two years, or both; and whoever uses a motor vehicle without authority knowing that such use is unauthorized shall, for the first offense be punished by a fine of not less than fifty dollars nor more than five hundred dollars or by imprisonment for not less than thirty days nor more than two years, or both, and for a second offense by imprisonment in the state prison for not more than five years or in a house of correction for not less than thirty days nor more than two and one half years, or by a fine of not more than one thousand dollars, or by both such fine and imprisonment; and whoever is found guilty of a third or subsequent offense of such use without authority committed within five years of the earliest of his two most recent prior offenses shall be punished by a fine of not less than two hundred dollars nor more than one thousand dollars or by imprisonment for not less than six months nor more than two and one half years in a house of correction or for not less than two and one half years nor more than five years in the state prison or by both fine and imprisonment. A summons may be issued instead of a warrant for arrest upon a complaint for a violation of any provision of this paragraph if in the judgment of the court or justice receiving the complaint there is reason to believe that the defendant will appear upon a summons."

[9]See note 6, *supra*. Nothing noted in *Commonwealth* v. *Ferreira*, 40 Mass. App. Ct. 32, 33 n.2 (2007), is to the contrary.

[10]This first portion also includes crimes for which "public way" is not an element. For example, "public way" is not an element of the crime of making a false statement in an application for a driver's license.

[11]The last portion of the section, also set·off by a semicolon, but not relevant here, contains additional punishments for third and subsequent unauthorized use offenses.

tion of the section, which ends in a semicolon, does not modify the crime of use without authority found in the next, independent clause of the section. Indeed, the Supreme Judicial Court noted as much in *Commonwealth* v. *Costarelli*, 374 Mass. at 684 n.4, where it stated that the three parts of § 24(2)(*a*) constitute independent clauses that are separated from each other by semicolons. "The two clauses that define the prohibited conduct other than use without authority expressly require that the conduct take place on a public way. The use without authority provision, however, contains no such language." *Ibid.* See Nolan & Sartorio, Criminal Law § 578, at 582-583 (questioning whether public way is actually an element of unauthorized use of a motor vehicle). We conclude that public way is not an element of the crime of use of a motor vehicle without authority.[12]

iii. *Necessity defense.* The juvenile also claims that his motion for required findings of not delinquent should have been allowed as to all the charges because the Commonwealth failed to prove that he did not act out of necessity. Given the outcome of the juvenile's malicious destruction delinquency findings discussed above, we confine our discussion of the necessity defense to the delinquency finding based on his use of a motor vehicle without authority.

The availability of the defense of necessity has been limited to the following circumstances: "(1) the defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his [or her] action will be effective as the direct cause of abating the danger; (3) there is [no] legal alternative which will be effective in abating the danger; and (4) the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding

---

[12]We note that there was evidence that prior to driving through the fence and onto the driving range, the juvenile first drove the Jeep across the parking lot of Whirlaway Golf Center, which may well have been a "place to which members of the public have access as invitees or licensees." However, the record before us is insufficient to reach that conclusion. Given that it was after midnight when these events occurred, it is likely that both the driving range and the adjoining used car lot were closed. Also, the record contains no indication whether the parking lot contained any amenities available to the general public after the businesses' closing hours, such as an automated teller machine, pay telephones, or newspaper distribution boxes. See *Commonwealth* v. *Kiss*, 59 Mass. App. Ct. 247, 250 (2003).

the values at issue." *Commonwealth* v. *Pike*, 428 Mass. 393, 400 (1998), quoting from *Commonwealth* v. *Hood*, 389 Mass. 581, 591 (1983).

In the juvenile's case, the evidence could have fostered a debate as to the first two elements, but those were conceded by the Commonwealth at trial. The third element stands on a different footing.[13] As the trial judge found, the juvenile had legal alternatives to abate the danger, but he did not pursue them. In particular, the trial judge found that the juvenile could have exited the Jeep and run the short distance to his house to seek help. There was also evidence that cellular telephones were available either to the juvenile or to his friends, any one of whom could have notified the police about the circumstances. Either of these alternatives would have effectively abated the danger the juvenile perceived, and there was no evidence that either was futile. See *Commonwealth* v. *Pike*, *supra* at 401, quoting from *Commonwealth* v. *Brugmann*, 13 Mass. App. Ct. 373, 380 (1982) ("it is up to the defendant to make himself aware of any available lawful alternatives, 'or show them to be futile in the circumstances' ").

b. *Restitution.*[14] The juvenile raises two claims relative to the restitution hearing, neither of which was preserved by an objection. First, he alleges error in the admission of the insurance company's estimate of damage to the Jeep in the amount of $2,649. Specifically, the juvenile takes issue with the hearsay nature of the evidence. The short answer is that the strict rules of evidence do not apply at restitution hearings, and reliable hearsay is admissible. *Commonwealth* v. *Casanova*, 65 Mass. App. Ct. 750, 755-756 (2006). There was no error, let alone any miscarriage of justice.

Second, the juvenile claims that the restitution judge failed to consider his ability to pay the ordered restitution. This claim is

---

[13]The juvenile makes no mention of the fourth element in his brief, and there is no record evidence relevant to it.

[14]Even though we vacate the findings of delinquency on the malicious destruction counts, the restitution award is sufficiently connected to the delinquency finding on the use of a motor vehicle without authority to be maintained. See *Commonwealth* v. *McIntyre*, 436 Mass. 829, 833 n.2 (2002). In addition, the only evidence of damage that was admitted related to the Jeep, and none was offered relative to the fence and turf.

made for the first time on appeal and was not raised at a time when the restitution judge could have done something about it. To further frustrate any resolution of the matter, the juvenile did not present any evidence as to his ability to pay. See *Commonwealth* v. *Stout*, 356 Mass. 237, 243 (1969) (appellate review should be based on what occurred at trial, not what might have been). We note that the restitution order merely set forth the amount for which the juvenile was being held accountable as a result of his criminal conduct. The restitution judge did not order the juvenile to pay the amount forthwith or in installments, either of which would have some bearing on his present ability to pay. See *Commonwealth* v. *Nawn*, 394 Mass. 1, 8-9 (1985). In the end, we determine that there was no risk that justice miscarried because the payment of restitution was a condition of the juvenile's probation, and he may raise his ability to pay at any future probation revocation hearing that should take place based on his nonpayment.

3. *Conclusion.* The delinquency findings based on the juvenile's violation of G. L. c. 266, § 127, are vacated, and the complaint is dismissed as to those counts. The delinquency finding based on the juvenile's violation of G. L. c. 90, § 24(2)(*a*), and the restitution order are affirmed.

*So ordered.*