## COMMONWEALTH vs. JAMES P. GORDON.

No. 11-P-519.

Barnstable. April 12, 2012. - July 23, 2012.

Present: RUBIN, BROWN, & HANLON, JJ.

*Destruction of Property. Malicious Injury to Property. Malice.*

At the trial of a criminal complaint charging the defendant with malicious
    destruction of property with a value exceeding $250, the judge properly
    denied the defendant's motion for a required finding of not guilty, where
    sufficient evidence existed (i.e., the defendant deliberately destroyed a
    considerable amount of his landlords' property, including personal,
    sentimental, and newly purchased items that were part of ongoing renova-
    tion work that the landlords were doing themselves; and the destruction
    was not incidental to some other venture or purpose) to permit the fact
    finder to determine whether the defendant's actions were malicious.
    [229-233]

COMPLAINT received and sworn to in the Falmouth Division of
the District Court Department on March 16, 2010.

The case was heard by *Michael C. Creedon*, J.

*Paul Lonardo-Roy*, Committee for Public Counsel Services,
for the defendant.

*Julia K. Holler*, Assistant District Attorney, for the
Commonwealth.

HANLON, J. After a jury-waived trial, a District Court judge
found the defendant, James P. Gordon, guilty of malicious
destruction of property with a value exceeding $250. See G. L.
c. 266, § 127. He appeals, arguing that the Commonwealth
failed to prove he destroyed the property maliciously. We affirm.

*Background.* On March 13, 2010, the defendant was in his
rented second-floor apartment in the town of Bourne. He started
to break things. First, he broke his cellular telephone; then he
broke the dishes on his kitchen table. After that, he began to
break his furniture, progressing eventually to fixtures in the

apartment and items belonging to his landlords in the first-floor area of the house. A neighbor, hearing "repeatedly, broken glass," called the landlords and the police. When Bourne police Officer Jonathan MacDougall arrived, he saw "stuff all over the yard, . . . furniture, plants, vases, typical stuff that's found in a house, all over the yard. Much of it was broken." When the officer asked the defendant what was going on, Gordon replied, "I'm crazy and I do this to release my rage."[1]

The woman who owned the house testified that she and her husband had been working to renovate it; her husband had just refinished all the floors on the first floor. They lived in a nearby town and rented the second-floor area to the defendant. They had had no prior problems with him at all. Before March 13, her area, the first floor, was "perfect. . . . It was gorgeous." After her neighbor called to report the disturbance next door, she and her husband went immediately to the house. When she arrived, she saw "[d]evastation . . . twenty-eight broken windows, [her collection of bronze] cranes in pieces out the front windows and furniture turned upside down on the first floor. My flowers thrown all over the place. And my bathroom vanity broken. My window. My mirrors. My brand new Anderson windows in pieces. . . . [It] stunk already because kitty litter and beer was all over the place. And the feces. It was just — it was like a bomb had gone off. That's the only way you can explain it. I just — I was heartbroken. And I went home and I didn't go back." There was also evidence that the defendant broke a brand new glass-topped stove.

At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty; the trial judge denied the motion. The defendant did not renew it at the close of all of the evidence.

After the Commonwealth rested, the defendant took the stand and he testified that he had broken all of the things that were broken and he "intended to break whatever [he] broke." He agreed that he had thrown his four television sets through the windows without opening the windows first, and that he had

---

[1] The defendant also told the police officers that he planned to kill himself and burn the house down; they found a noose hanging down from the upstairs balcony. The defendant was transported from the scene to a hospital. No defense of lack of criminal responsibility was raised.

broken the bronze cranes and other items belonging to the landlords, knowing the property belonged to them. He insisted that he had no hostility towards the landlords; they "never entered [his] mind."

*Discussion.* On review of the defendant's motion for a required finding, we apply the familiar *Latimore* test. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). The defendant does not contest that he wilfully and intentionally destroyed the property of his landlords, nor does he dispute that the value of the property exceeded $250; he argues only that he did not destroy the property maliciously, "in a sense of hostility, revenge, or cruelty." *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 439 (1983) (*Peruzzi*). In his view, there was no evidence that he felt any hostility toward the property owners; rather, he was angry at himself and wanted to break things. Therefore, he argues, malice cannot be inferred, and a required finding of not guilty should have been entered.

In *Peruzzi*, this court traced the "development of the concept of malice in malicious damage cases" to *Commonwealth* v. *Walden*, 3 Cush. 558 (1849), and *Commonwealth* v. *Hosman*, 257 Mass. 379 (1926). We concluded that "the *Hosman* decision . . . reaffirm[ed] the holdings in the earlier cases that 'something more than a deliberate intent to do a wrong' must be shown to establish malice. *Id.* at 384. . . . 'The word "wilful" means intentional and by design in contrast to that which is thoughtless or accidental. Malice, on the other hand, refers to a state of mind of cruelty, hostility or revenge. Both elements are required for the crime of destruction of property or as it is sometimes referred to, malicious mischief.' " *Peruzzi, supra* at 440, 442-443, quoting from Nolan, Criminal Law § 427, at 259 (1976).[2]

The Supreme Judicial Court followed this reasoning in *Commonwealth* v. *McGovern*, 397 Mass. 863 (1986) (*McGovern*), a case with facts similar to those presented here. In *McGovern*, the defendant was found inside a Massachusetts Bay Transportation Authority (MBTA) parking lot toll booth "tearing it apart. The [MBTA police] officers also observed that a side window

---

[2]In the case before us, there is no suggestion that the defendant acted out of revenge.

of the booth was broken and the door was 'knocked in.' Two chairs, a money box, a portable heater, and a lighting unit were 'thrown out of the booth onto the street.' The defendant seemed to be pulling the electrical wiring off the ceiling as the officers approached the scene. . . . At that time, the defendant appeared to be under the influence of drugs, alcohol, or both."[3] *Id.* at 865. Money and parking claim checks were found outside the booth. On these facts, the court was satisfied that the "evidence was sufficient to prove beyond a reasonable doubt that the defendant wilfully and maliciously destroyed the MBTA's property." *Id.* at 868, citing *Peruzzi, supra* at 443. The court also noted that "[i]t is immaterial whether the defendant knew the identity of the owner of the property," and concluded that "[t]he evidence clearly warranted the judge in finding beyond a reasonable doubt that the defendant's destructive acts were by design and were hostile to the owner of the booth."[4] *McGovern, supra* at 868. Like the *McGovern* case, here the evidence presented permitted an inference of hostility or cruelty given the magnitude of the destruction and the absence of any explanation for it.

Subsequent decisions have sought to elucidate the line between malicious destruction of property on one hand and wanton destruction on the other.[5] In *Commonwealth* v. *Ruddock*, 25 Mass. App. Ct. 508, 512-513 (1988), for example, this court discussed what "transforms an injurious act into wanton conduct. [The court was] concerned with a spirit of indifference or recklessness, perhaps even arrogance and insolence, but not cruelty, revenge, or hostility. . . . However, conduct cannot be characterized as wanton or reckless for purposes of criminal

---

[3]"The evidence at the jury-waived trial consisted entirely of a stipulation that [the] MBTA police officer . . . would testify in accordance with a police report and a transcript of his testimony before the grand jury." *McGovern, supra* at 865.

[4]By contrast, the court did *not* find sufficient evidence of an intent to steal; rather, "the evidence . . . does not permit a finding beyond a reasonable doubt that the defendant intended anything more than to vandalize the booth." *Id.* at 868-869.

[5]Both offenses are described in G. L. c. 266, § 127: malicious destruction is a felony and thus carries a possible State prison sentence; wanton destruction is a misdemeanor, carrying only a house of correction sentence, the length of the sentence depending on the value of the property destroyed.

liability simply by reason of an indifference to a probable but slight injury. In the absence of a likelihood of substantial injury, conduct is neither wanton nor reckless for purposes of establishing criminal responsibility." Therein lies the basis for the conclusion that wanton destruction of property is not a lesser included offense of malicious destruction. Each charge contains an element that the other does not: malicious destruction requires "cruelty, revenge, or hostility," but not necessarily a likelihood of substantial injury. "Conduct may be wilful and malicious although its harmful consequences are neither substantial nor highly likely." *Commonwealth* v. *Schuchardt*, 408 Mass. 347, 352 (1990). See *Commonwealth* v. *Deberry*, 441 Mass. 211, 224 n.24 (2004).

The court in *Commonwealth* v. *Cimino*, 34 Mass. App. Ct. 925 (1993), also discussed the difference between malicious and wanton destruction and noted that "[t]he line cannot be located exactly; an approximation must do." *Id.* at 927. There, Cimino and his associates "had taken turns shooting out the windows of parked cars. Specifically, the defendant had himself accounted for the windows of two cars . . . and he was in the car while the others performed." *Id.* at 926. The court affirmed Cimino's conviction of malicious destruction because the defendant and the others "aimed the BB pistol and hit their targets." *Id.* at 927. In reaching its determination the court referred to the earlier case of *Commonwealth* v. *Morrill*, 14 Mass. App. Ct. 1003 (1982), where "[s]ome youths threw rocks from a bridge and one struck a car passing below. If the rocks were thrown casually, without thought of striking any cars, the offense might be in the wanton category . . . ; had the rocks been aimed at passing cars, and one or more hit, there would be wilful and malicious crime." *Commonwealth* v. *Cimino*, 34 Mass. App. Ct. at 927. The distinction between wilful and malicious destruction and wanton destruction was similarly drawn in *Commonwealth* v. *McDowell*, 62 Mass. App. Ct. 15, 20-22 (2004).

The defendant in *Commonwealth* v. *Wynn*, 42 Mass. App. Ct. 452, 452-453 (1997), made an argument similar to that presented in this case, that is, that the evidence failed to establish " 'malice' . . . because it did not show, as it must, that the defendant's and his coventurers' conduct was 'motivated by "cruelty,

hostility or revenge." ' *Commonwealth* v. *Schuchardt*, 408 Mass. at 352, quoting from *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 443 (1983)." The court concluded that sufficient evidence of malice was shown by actions that "could be construed by a jury as 'cruel' in both of its basic connotations: a 'disposition to harm and satisfaction in or indifference to suffering.' The American Heritage Dictionary 449 (3d ed. 1992)." *Commonwealth* v. *Wynn*, 42 Mass. App. Ct. at 456.

Other cases have explained the delineation similarly, while coming to different conclusions on different facts. See, e.g., *Commonwealth* v. *Armand*, 411 Mass. 167, 170 (1991) (damage to motor vehicle insufficient to establish malicious destruction; "[t]he defendant's principal goal in the venture appears from the evidence to have been to assist his three companions in getting both victims out of the car so they could be beaten, and to beat them"). See also *Commonwealth* v. *Redmond*, 53 Mass. App. Ct. 1, 5 (2001);[6] *Commonwealth* v. *Morris M.*, 70 Mass. App. Ct. 688, 690, 692-693 (2007) (destruction of property caused by driving Jeep across driving range of golf course and smashing it into pole not malicious, because juvenile was driving vehicle to escape another who apparently intended to harm him; "Nor may it be reasonably inferred that by design he purposefully destroyed the fence and turf motivated by hostility, cruelty, or vengeance toward their owner as opposed to the resulting damage being occasioned by, or incidental to, his desire to escape his circumstances"). The court in *Commonwealth* v. *Morris M.*, *supra*, distinguished *Commonwealth* v. *Cimino*, *supra*, observing "[w]hat made the shootings malicious and not wanton conduct was the fact that [Cimino] aimed the gun at the car windows and acted with the principal purpose of causing damage to the windows, i.e., his intended targets. The car windows were not damaged as a result of the defendant's casual or reckless firing of the BB gun." *Id.* at 692.

---

[6]The damage to the doors and alarm system, "[a]lthough clearly intended . . . was nothing more than 'the adventitious by-product of a wholly discrete criminal enterprise' (the theft of the computers) and was not . . . destructive acts that were by design and hostile to the owner of the property, whoever that may have been. . . . The forcible entry into an office will, without doubt, result in some destruction of property, but a messy thief is not necessarily malicious within the meaning of the statute." *Commonwealth* v. *Redmond*, *supra* at 5, quoting from *Commonwealth* v. *Wynn*, 42 Mass. App. Ct. at 456.

In the case before us, the evidence shows that the defendant deliberately destroyed a considerable amount of his landlords' property, including personal, sentimental, and newly purchased items that were part of ongoing renovation work that the owners were doing themselves. It was for the fact finder, here the judge, to determine whether the defendant's actions were malicious. Unlike the factual situations presented in *Commonwealth* v. *Redmond, supra,* or *Commonwealth* v. *Morris M., supra,* the destruction here was not incidental to some other venture or purpose. While the defendant maintained that he acted in anger rather than with hostility or cruelty, it was for the judge to determine whether the Commonwealth had met its burden of proof on the element of acting maliciously. The judge did not err in declining to grant the defendant's motion for a required finding of not guilty.

*Judgment affirmed.*