NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

17-P-1127                                          Appeals Court

COMMONWEALTH  vs.  ANDREW WOODS.

No. 17-P-1127.

Worcester.      November 8, 2018. - February 7, 2019.

Present:  Green, C.J., Meade, & Sacks, JJ.

Firearms.  Controlled Substances.  Evidence, Constructive
     possession.  Armed Home Invasion.  Malicious Injury to
     Property.  Malice.  Practice, Criminal, Required finding.

Indictments found and returned in the Superior Court
Department on March 20, 2015.

The cases were tried before Richard T. Tucker, J.

Deborah Bates Riordan for the defendant.
Michelle R. King, Assistant District Attorney, for the
Commonwealth.

GREEN, C.J.  The defendant appeals from his convictions of

various charges arising from the discovery of a loaded firearm

and drugs in a closet in the apartment in which he was arrested.[1]

_____

[1] The defendant was convicted of:  (i) armed home invasion,
G. L. c. 265, § 18C; (ii) trafficking in cocaine between thirty-
six and one hundred grams, G. L. c. 94C, § 32E (b); (iii)

Among his claims on appeal, the defendant contends that (1) the evidence was insufficient to establish that he constructively possessed the loaded firearm and drugs; (2) his conviction of possession of a loaded firearm must be reversed, because the jury were not instructed that they must find that the defendant knew that the firearm was loaded; (3) his conviction of possession of ammunition is duplicative of his conviction of possession of a loaded firearm; (4) the evidence was insufficient to establish the use of force or threat element of the charge of armed home invasion; and (5) the evidence was insufficient to support his conviction of malicious destruction of property over $250, both because it did not establish that he acted with malice and because there was no evidence that the property damage was more than $250.

We agree with the Commonwealth's concession that the defendant's conviction of possession of ammunition is duplicative of his conviction of possession of a loaded firearm, and we also agree that the evidence was insufficient to support

---

possession of a firearm in a felony, G. L. c. 265, § 18B; (iv) carrying a firearm without a license, G. L. c. 269, § 10 (a); (v) carrying a loaded firearm without a license, G. L. c. 269, § 10 (n); (vi) possession of ammunition without an FID card, G. L. c. 269, § 10 (h) (1); (vii) possession of a class A substance with intent to distribute, G. L. c. 94C, § 32 (a); (viii) malicious destruction of property over $250, G. L. c. 266, § 127; and (ix) resisting arrest, G. L. c. 268, § 32B.

his conviction of malicious destruction of property over $250. Accordingly, on the charge of unlawful possession of ammunition, the judgment is vacated, the verdict is set aside, and the indictment is to be dismissed. On the charge of malicious destruction of property over $250, the judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant on that count. We otherwise discern in the defendant's various arguments no cause for relief, and affirm the remaining judgments of conviction.

Background. On the morning of December 23, 2014, a team from the Massachusetts fugitive apprehension task force went to 190 Blossom Street in Fitchburg to serve an arrest warrant on an individual they understood to be living in apartment 3 at that address (the only apartment unit on the third floor).[2] The team entered the building through the unlocked front door and began climbing the stairs; as they reached the second floor landing they noticed an open apartment door on their left, and then heard a loud bang -- followed by a woman's screams for help -- coming from the third floor. The team raced up the stairs to the third floor, arriving ten to fifteen seconds after hearing the loud bang. When they arrived, they found the apartment door off its hinges and lying on the kitchen floor, and the door

_____

[2] The building is a three-story apartment building.

frame damaged; a hole in the door suggested it had been kicked in.

Lauren Wiener was the tenant of the third floor apartment, where she and her husband had moved about three months earlier. Neither she nor her husband was the target of the arrest warrant the task force had come to serve.[3] She had been sleeping in her bedroom at around 9:00 A.M. when she was awakened by a crash. She began screaming. At the time, the apartment was dark, with the lights off and the shades pulled. After hearing the crash, Wiener saw a "dark figure" in her bedroom doorway, putting his finger to his lips while saying, "shhh." Wiener was "afraid for [her] life," and continued screaming for help. Wiener then saw the person move from her bedroom doorway into the living room.

As Trooper Amy Waterman approached the entrance to Wiener's apartment, she saw an individual moving quickly in the back of the living room, coming toward her. The man, later identified as the defendant, initially stopped and was cooperative; however, he quickly "threw an elbow to resist . . . attempts to arrest him, and then attempted to run out the way that [everyone] had come in, past the broken door." Several members of the task force physically wrestled with the defendant for

---

[3] Wiener's husband was not home at the time the team arrived. There is no indication in the evidence that the target of the arrest warrant was a resident of the apartment.

several minutes in an effort to place him in handcuffs. A search of the defendant yielded $2,293 in cash, three one hundred dollar bills that were "smudged and off-center," and a "rock in a sock" makeshift weapon comprised of a sock containing heavy metal objects. On the floor, near the defendant, were three cellular telephones (cell phones) that the defendant acknowledged as his.

While Trooper Waterman went into the bedroom to speak with Wiener, who had been screaming and crying and was obviously frightened, another trooper stayed with the defendant, and other task force members conducted a protective sweep of the apartment. There were four doors in the living room: two closet doors, one door to the attic, and an exit door to the outside. When Worcester police Officer Robert Johnson looked in one of the closets, he observed a bag of empty soda bottles on the floor and a child's blue kick ball, slit open, sitting on a wire rack above.[4] Officer Johnson could see the handle of a firearm inside the kick ball; as soon as he saw the weapon he alerted other members of the task force. The firearm was loaded with a bullet in the chamber and a clip holding additional rounds of ammunition.

_____

[4] The other closet contained Wiener's pea coat, scarves, and her husband's work reflector vests.

After Officer Johnson alerted the team to the discovery of the firearm, police brought Wiener into the living room to look at the items in the closet. While standing in the living room, Wiener heard the defendant say repeatedly, "that's not mine," though she did not know to what he was referring. Wiener was then asked to look inside the closet. Inside the closet, she saw a blue ball that had not been in the closet when she last looked into it the previous night. Inside the blue ball, Wiener was able to see two smaller balls (a basketball and a tennis ball), a handgun, and what appeared to be drugs inside the smaller balls. Wiener had never seen the blue ball or its contents before that moment, and the ball and its contents did not belong to her or any other member of her household.

As the defendant was led out of the building, he asked Massachusetts State Trooper Darlene DeCaire to close the second-floor door to his apartment, which she did. Task force members attempted to secure the defendant's apartment while other members applied for a search warrant. However, while the task force members were waiting, the defendant's girlfriend, Alicia Ortiz, entered the apartment through an unknown door that she then locked, and would not let the task force members inside. At some point before the warrant was obtained, Ms. Ortiz left the apartment; she was not pat frisked or searched as she left.

Once the search warrant was obtained, task force members searched the defendant's apartment. Inside they found a digital scale in a bedroom drawer. In a kitchen cabinet, they found a box of sandwich bags, one of which had a corner ripped off, and an empty gun holster. The gun found inside the blue ball "fit pretty well" into the holster found in the defendant's apartment.

When police later examined the blue ball at the Leominster State police barracks, they determined that the gun was a 380-caliber handgun, loaded with six rounds of ammunition. There was a smaller brown basketball inside the blue ball that was cut open, and the basketball contained a small purple tennis ball, also cut open. There were small plastic bags inside the basketball and tennis ball, some containing a "white-powder substance" and other bags holding a "tan powder substance." Five bags of white powder tested positive for cocaine, with a total weight of 94.36 grams. Two packages were positive for methylone, commonly referred to as "bath salts," and the tan powder tested positive for heroin.

Discussion. 1. Constructive possession. The defendant contends that the evidence was insufficient to establish that he possessed the blue ball (and the other items it contained) found in the closet of Wiener's apartment. In assessing the sufficiency of the evidence, we must decide "whether the

evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged . . ." Commonwealth v. Mendes, 75 Mass. App. Ct. 390, 392 (2009), quoting Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). Because the defendant did not have actual physical possession of the blue ball when he was apprehended, the Commonwealth's case rested on the theory of constructive possession. "'Constructive possession' requires proof that the defendant had 'knowledge coupled with the ability and intention to exercise dominion and control.'" Commonwealth v. Than, 442 Mass. 748, 751 (2004), quoting Commonwealth v. Sespedes, 442 Mass. 95, 99 (2004). "Proof of possession of [contraband] may be established by circumstantial evidence, and the inferences that can be drawn therefrom." Commonwealth v. LaPerle, 19 Mass. App. Ct. 424, 426 (1985). "The defendant's mere presence in the area where contraband is found is insufficient to show 'the requisite knowledge, power, or intention to exercise control over the [contraband], but presence, supplemented by other incriminating evidence will serve to tip the scale in favor of sufficiency.'" Commonwealth v. Schmeider, 58 Mass. App. Ct. 300, 303 (2003), quoting Commonwealth v. Albano, 373 Mass. 132, 134 (1977). In the present case, several pieces of incriminating evidence

suffice to tie the defendant to the blue ball found in Wiener's apartment closet.

To begin with, the open door to the defendant's apartment immediately downstairs from Wiener's, coupled with evidence of a forced entry into Wiener's apartment, and the defendant's efforts to quiet Wiener's screams (by holding his finger to his lips and whispering "shhh") suggest an urgent and spontaneous series of actions by the defendant to flee from his apartment (and to hide in Wiener's) when the task force entered the apartment building. Wiener and her husband had no children, and no children's toys (other than the blue ball with the basketball and the tennis ball stored inside it) were found in Wiener's apartment. Wiener testified that she did not see the blue ball in the closet the evening before its discovery by the task force, and adamantly denied that it belonged to her or her husband.[5]

In addition, police found a gun holster in the defendant's apartment into which the handgun found in the blue ball fit "pretty well." They also found in the defendant's apartment plastic baggies including one with a cut corner, and a digital

---

[5] Though the defendant also denied that the ball was his when he was apprehended at the scene, the jury were free to credit Wiener's denial and discredit the defendant's.

scale; both items were described in expert testimony as indicative of the drug trade.[6]

Finally, though Wiener and her husband had no children, the defendant and his girlfriend each had a child. The defendant's girlfriend's child lived in their apartment and the defendant's child visited on weekends. Children's toys were seen by task force members in the defendant's apartment, permitting an inference that the defendant had converted three balls previously used as children's toys into storage compartments for the drugs and handgun found in Wiener's closet.

2. <u>Armed home invasion</u>. There is likewise no merit in the defendant's challenge to the sufficiency of the evidence on the charge of armed home invasion. In order to convict the defendant of that charge, the Commonwealth was required to establish that:

> "[T]he defendant (1) 'knowingly enter[ed] the dwelling place of another'; (2) 'knowing or having reason to know that one or more persons are present within' (or entered without such knowledge but then remained in the dwelling place after acquiring or having reason to acquire such knowledge); (3) 'while armed with a dangerous weapon'; and (4) 'use[d] force or threaten[ed] the imminent use of force upon any person within such dwelling place whether or not injury occur[red], or intentionally cause[d] any injury to any person within such dwelling place.'"

---

[6] Expert testimony also described the presence of multiple cell phones (such as the three found next to the defendant at the time of his arrest) as associated with the drug trade.

Commonwealth v. Smith, 458 Mass. 1012, 1013 (2010), quoting

Commonwealth v. Doucette, 430 Mass. 461, 465-466 (1999).

In the present case, the Commonwealth proceeded on two separate theories:  that the defendant threatened Wiener with the imminent use of force after he forcibly entered her apartment and directed her to be silent, and that he used actual force against the task force members who thereafter entered Wiener's apartment.[7]  We are persuaded that the evidence sufficed to support a guilty verdict on either theory.

Following the defendant's forcible, violent entry into her apartment while she was asleep, by her account Wiener was frightened for her life (and her fear was objectively reasonable).[8]  In such circumstances, a rational finder of fact could construe the defendant's directive to Wiener that she be silent as an implicit threat of violence against her if she did not comply.  In any event, there is no serious dispute that the defendant used actual force against the task force members as they attempted to take him into custody.[9]  That the task force

---

[7] The defendant challenges only the sufficiency of the evidence on the element of threat or use of force.

[8] We note that the Commonwealth was not required to show that Wiener was actually placed in fear.  See Commonwealth v. Dunn, 43 Mass. App. Ct. 58, 62 (1997).

[9] For the first time on appeal, the defendant contends that, because the task force members were not listed as victims on the indictment for armed home invasion, the Commonwealth could not

members were not in the apartment when the defendant entered it is of no consequence.  See Commonwealth v. Martinez, 85 Mass. App. Ct. 288, 291 (2014).

    3.  Loaded firearm.  As the Commonwealth acknowledges, the jury instruction on the charge of possession of a loaded firearm was deficient, insofar as it did not instruct the jury that, to return a verdict of guilty, they must find that the defendant knew that the firearm was loaded.  See Commonwealth v. Brown, 479 Mass. 600, 608 (2018).[10]  Though the defendant did not object to the instruction, the absence of instruction on an element of the charged offense can often give rise to a substantial risk of a miscarriage of justice.  See, e.g., Commonwealth v. Redmond, 53 Mass. App. Ct. 1, 8 (2001).  In the circumstances of the present case, "[h]aving reviewed the charge and the evidence as a whole," id., we discern no such risk.

---

pursue that theory at trial.  To the contrary, "'[i]n a criminal case, any . . . objection based upon defects . . . in the complaint or indictment, other than a failure to show jurisdiction in the court or to charge an offense, shall only be raised prior to trial . . . .'  Failing to object to such a defect prior to trial ordinarily waives any argument pertaining to that defect."  Commonwealth v. Lamont L., 438 Mass. 842, 845 (2003), quoting G. L. c. 277, § 47A.  The defendant was on notice of the Commonwealth's alternative theory before trial began and raised no objection.  The claim is accordingly waived.

    [10] We note that the trial judge and the parties did not have the benefit of the Brown decision at the time of trial.

In particular, we observe that the defendant was convicted of the charge of possession of ammunition. On that charge, the jury were instructed clearly that a required element for a verdict of guilty was that the "defendant knew that he possessed that ammunition." As the defendant acknowledges, the only ammunition for which he was charged was that located within the firearm. Because the jury found that the defendant knowingly possessed the ammunition within the firearm, the failure to instruct the jury that they were required to find that he knew the handgun was loaded with ammunition in order to return a verdict of guilty on the charge of possession of a loaded firearm was of no significance.[11]

4. Malicious destruction of property. We agree with the defendant that the evidence was insufficient to satisfy the element of malice on the charge of malicious destruction of property. "To prove a violation of G. L. c. 266, § 127, as

---

[11] As the Commonwealth concedes, the defendant's conviction on the lesser included offense of possession of ammunition is duplicative of his conviction of possession of loaded firearm, in the circumstances of this case, where the only ammunition at issue was that within the firearm. See Commonwealth v. Johnson, 461 Mass. 44, 54 (2011). Accordingly, on the indictment charging unlawful possession of ammunition under G. L. c. 269, § 10 (h), the judgment is vacated, the verdict is set aside, and the indictment is to be dismissed. Because the defendant's sentence on this conviction did not increase the amount of time of the defendant's incarceration, we do not remand for resentencing.

amended by St. 1994, c. 168, § 4, the Commonwealth must prove that the [defendant] 'destroy[ed] or injure[d] the personal property, dwelling house or building of another . . . .' If the destruction or injury is 'wilful and malicious,' the permissible penalty is greater than if it is merely 'wanton,' which is a separate crime requiring different proof. See Commonwealth v. Schuchardt, 408 Mass. 347, 352 (1990)." Commonwealth v. Morris M., 70 Mass. App. Ct. 688, 691 (2007). The terms "wilful" and "malicious" represent two distinct elements of the crime, both of which must be proved beyond a reasonable doubt. See Redmond, 53 Mass. App. Ct. at 4. "The word 'wilful' means intentional and by design in contrast to that which is thoughtless or accidental. Malice, on the other hand, refers to a state of mind of cruelty, hostility or revenge." Nolan & Santoro, Criminal Law § 427, at 438 (2001).

In the present case, the evidence clearly sufficed to show that the defendant acted wilfully (that is to say, intentionally) when he broke down the door to Wiener's apartment to gain entry. However, the wilful commission of an unlawful or even destructive act does not, by itself, suffice to prove malice under G. L. c. 266, § 127. See Redmond, 53 Mass. App. Ct. at 4. In the circumstances of the present case, the evidence establishes instead that the defendant's acts in breaking down the door were wanton -- that he acted "heedlessly

and in reckless disregard of the rights of others." Morris M., 70 Mass. App. Ct at 692, quoting Nolan & Santoro, supra at 440. There is no evidence that the defendant was motivated by animus or hostility toward Wiener; instead, his destruction of her door was by all appearances an incidental consequence of his ultimately fruitless efforts to evade the approaching task force. And though the defendant's actions were wanton, he was not charged with wanton destruction of personal property, and it is not a lesser included offense of malicious destruction of property. See Schuchardt, 408 Mass. at 352; Redmond, supra at 5.

Commonwealth v. Cimino, 34 Mass. App. Ct. 925 (1993), on which the Commonwealth relies, is not to the contrary. In that case, the defendant was convicted of malicious destruction of property based on his destruction of car windows by shooting through them with a BB gun. What made the shootings malicious rather than wanton is that destruction of the windows was the defendant's principal purpose in shooting at them. See id. at 927. Compare Redmond, 53 Mass. App. Ct. at 4-5 (evidence of malicious destruction was insufficient where destruction of property was not designed to intimidate or overpower its owner,

but rather was incidental means to carry out defendant's goal of theft).[12]

Conclusion.  On the charge of unlawful possession of ammunition, the judgment is vacated, the verdict is set aside, and the indictment is to be dismissed.  On the charge of malicious destruction of property over $250, the judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant on that count.  The remaining judgments are affirmed.

So ordered.

---

[12] Our conclusion that the evidence was insufficient to satisfy the element of malice obviates any need to address the defendant's contention that the evidence was insufficient to establish that the amount of damage exceeded $250.