NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-279

COMMONWEALTH

vs.

HAROLD NUNEZ REYES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Harold Nunez Reyes, appeals from a conviction, after a bench trial in the District Court, of malicious destruction of property, G. L. c. 266, § 127.  The defendant's conviction was based on damage to the apartment he rented from the victim.  Concluding that the testimony that the defendant and the victim had an acrimonious relationship and that the defendant's apartment was substantially damaged once the defendant was required to move out provided sufficient evidence to establish identity and malicious destruction of property, we affirm.

1.  Standard of Review.  "When reviewing the denial of a motion for a required finding of not guilty, 'we consider the

evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Commonwealth v. Quinones, 95 Mass. App. Ct. 156, 162 (2019), quoting Commonwealth v. Faherty, 93 Mass. App. Ct. 129, 133 (2018).  "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'"  Commonwealth v. Sabin, 104 Mass. App. Ct. 303, 305 (2024), quoting Commonwealth v. Howe, 103 Mass. App. Ct. 354, 357 (2023).  "Each inference drawn from the evidence must be a reasonable and logical conclusion, and the [factfinder] may not rely upon conjecture, guesswork, or speculation to choose between alternate inferences." Commonwealth v. MacCormack, 491 Mass. 848, 860 (2023).

For the crime of malicious destruction of property, the Commonwealth must prove "that (1) the defendant injured or destroyed the personal property, dwelling house, or building of another; (2) he did so wilfully; (3) he did so with malice; and (4) the property damaged or destroyed had a value greater than $[1,200]."  Commonwealth v. Chambers, 90 Mass. App. Ct. 137, 141 (2016).  The crime "requir[es] proof that the defendant's actions were both 'wilful' and 'malicious.'"  Commonwealth v. Redmond, 53 Mass. App. Ct. 1, 3-4 (2001).  The second and third

2

elements, along with the identity of the defendant, are at issue in this appeal.

2. Identity. "[I]t is basic law . . . that an essential element to be proved by the Commonwealth is that the individual who appears before the court as the defendant is the same person who is the subject of the indictment or complaint then on trial and the same person referred to in the evidence." Commonwealth v. Blackmer, 77 Mass. App. Ct. 474, 483 (2010), quoting Commonwealth v. Davila, 17 Mass. App. Ct. 511, 512 (1984). The Commonwealth does not need to prove, however, "that no person other than the defendant could have committed the crime." Commonwealth v. Shakespeare, 493 Mass. 67, 81 (2023), quoting Commonwealth v. Morgan, 449 Mass. 343, 349 (2007). "Proof of the identity of the person who committed the offense may be established in a number of ways and '[i]t is not necessary that any one witness should distinctly swear that the defendant was the man.'" Quinones, 95 Mass. App. Ct. at 162, quoting Blackmer, supra at 483.

Here, the evidence was sufficient for a factfinder to conclude that the defendant committed the damage. The victim testified that, upon negotiating a lease with the defendant, their relationship "kind of turned." The defendant had been "living there far below fair market rental rate" for several years. The victim testified that he and the defendant "had some

3

animosity apparently towards one another," and that he was "at housing court many times with [the defendant]." The defendant "denied [the victim] access repeatedly" when he would attempt "to go through [the defendant's apartment] with a worker" to fix reported issues with the apartment. When the victim would "make a plan [with] 24-hour notice," which the defendant would confirm "multiple times," the defendant would still "come out and say, Nope, you can't come in."

Evidence of the ongoing dispute between the defendant and the victim was supported by testimony from other witnesses. An official from the Salem Board of Health (board) testified that the defendant would "continually complain about the same issues that [were] raised in the report" to the board. A police officer corroborated the health official's report and testified that "[t]here was some other type of civil court issue that they had where [the defendant] was having to remove himself from the apartment."

Our conclusion is bolstered by the defendant's repeated false statements that the damage had been there from before the tenancy. Although the health official had personally observed the apartment "in relatively good condition" between April and June 2019, the defendant stated to the official that the "damage had been there all along" and that "it was already there, it wasn't new." The trier of fact could infer from the defendant's

4

false statements that he was trying to hide his own responsibility for the damage. See Commonwealth v. Vega, 54 Mass. App. Ct. 249, 253 (2002).

Although the evidence established that the defendant's girlfriend also had some issues with the defendant, there is little evidence of the girlfriend's involvement.[1] The board received the complaint from the defendant, not the girlfriend. The housing inspection report does not list the girlfriend, but only the defendant. The girlfriend was not present at the final inspection. "In order to convict on circumstantial evidence, it is not necessary to show that it was not in the power of any other person than the defendant to commit the crime." Commonwealth v. Winfield, 76 Mass. App. Ct. 716, 721 (2010), quoting Commonwealth v. Fancy, 349 Mass. 196, 200 (1965). The Commonwealth's evidence, "when taken together, 'formed a "mosaic" of evidence such that [a factfinder] could conclude, beyond a reasonable doubt'" that it was indeed the defendant who destroyed the victim's property. Commonwealth v. Pardee, 105 Mass. App. Ct. 496, 503 (2025), quoting Quinones, 95 Mass. App. Ct. at 162.

---

[1] The evidence showed that the girlfriend exchanged text messages with the landlord and filed a lawsuit regarding a broken ceiling tile in the apartment's kitchen. Although the victim was unsure who called the board of health for the final inspection, the health official testified that he "believe[d] it was defendant" who called for the final inspection.

3. _Intent_. Again, the Commonwealth had to prove that the defendant acted willfully and with malice. "The word 'wilful' means intentional and by design in contrast to that which is thoughtless or accidental. Malice, on the other hand, refers to a state of mind of cruelty, hostility or revenge." _Commonwealth_ v. _Woods_, 94 Mass. App. Ct. 761, 769 (2019), quoting J.R. Nolan & L.J. Sartorio, Criminal Law § 427, at 438 (3d ed. 2001). "However, the wilful doing of an unlawful act does not, by itself, suffice to prove malice under G. L. c. 266, § 127." _Commonwealth_ v. _Morris M_., 70 Mass. App. Ct. 688, 692 (2007). Malice may be shown with evidence that "the defendant was motivated by animus or hostility" and that the defendant's actions were not merely "an incidental consequence" of some other enterprise. _Woods_, _supra_ at 766.

Here, the trier of fact could find that the defendant's actions were beyond "thoughtless or accidental." _Commonwealth_ v. _Lauzier_, 53 Mass. App. Ct. 626, 634 (2002). The health official testified that "[t]he bathroom had been ripped out," "the toilet was broken," "pipes had been drilled into," "the shower surround was ripped out to the studs," "the radiator valves had appeared to have been loosened . . . to create [a] leak," the "vanity was missing," and "the toilet . . . looked

6

like it had been smashed." The defendant was not acting in a merely casual or reckless manner when he "deliberately destroyed a considerable amount of his landlord's property." Commonwealth v. Gordon, 82 Mass. App. Ct. 227, 233 (2012).

The trier of fact could reasonably find that the damage to the apartment was "gratuitous, excessive," and "hostile to the owner of the property." Commonwealth v. Doyle, 83 Mass. App. Ct. 384, 388 (2013), quoting Commonwealth v. Redmond, 53 Mass. App. Ct. at 5. This property damage, which occurred just prior to the defendant's eviction, was not a "deliberate condition precedent to effectuating" any goal of the defendant other than pure destruction. Commonwealth v. Wynn, 42 Mass App. Ct. 452, 456 (1997). Contrast Redmond, supra at 4 ("While the evidence was sufficient to support the conclusion that the defendant's principal goal was theft of the computers, it was insufficient to establish that the destruction of a door was more than a means to that end"). The trier of fact could reasonably conclude "that by design [the defendant] purposefully destroyed [much of the apartment] motivated by hostility, cruelty, or vengeance toward [the victim] as opposed to the resulting damage being occasioned by, or incidental to" any other desire. Gordon, 82 Mass. App. Ct. at 232. Accordingly, the judge

properly denied the defendant's motions for a required finding of not guilty.[2]

Judgment affirmed.

By the Court (Ditkoff,
 D'Angelo & Wood, JJ.[3]),

*Paul Little*

Clerk


Entered:   November 12, 2025.

---

[2] The evidence did not deteriorate during the defendant's case.  "Deterioration does not occur merely because the defendant contradicted the Commonwealth's evidence," but rather when the Commonwealth's evidence "is later shown to be incredible or conclusively incorrect."  Commonwealth v. Ross, 92 Mass. App. Ct. 377, 381 (2017), quoting Kater v. Commonwealth, 421 Mass. 17, 20 (1995).  That did not occur here.  Indeed, the defendant testified that his girlfriend did not cause the damage, thus providing further evidence of his identity as the perpetrator.

[3] The panelists are listed in order of seniority.