# Commonwealth vs. Christopher Doyle.

No. 11-P-1779.

Suffolk. October 11, 2012. - March 4, 2013.

Present: Graham, Vuono, & Hanlon, JJ.

*Breaking and Entering. Burglarious Implements. Destruction of Property. Malicious Injury to Property. Malice. Evidence,* Hearsay, State of police knowledge. *Constitutional Law,* Confrontation of witnesses. *Practice, Criminal,* Hearsay, Confrontation of witnesses, Instructions to jury.

At the trial of a criminal complaint charging the defendant with, inter alia, breaking into a depository in the nighttime with intent to commit a felony and malicious destruction of property over $250, the evidence was sufficient to prove beyond a reasonable doubt that an automated teller machine (ATM) was a depository [386-387]; however, the Commonwealth failed to prove that the destruction of the ATM was malicious, where it was clear that the damage was done in an effort to steal from the ATM and not with a state of mind infused with cruelty, hostility, or revenge [387-389].

At a criminal trial, the defendant's right to confront witnesses against him was not violated by the admission in evidence of testimony from a police officer that a witness, upon encountering the officer and a second officer at the scene of the crime, pointed in a certain direction, where the officer observed the gesture, there was no conversation between that officer and the witness, and the gesture was relevant to explain why the officers went after the defendant, instead of stopping to speak to the witness [389-390]; further, although testimony by the second police officer regarding his conversation with the witness was admitted in error, in that defense counsel's asking the officer whether the witness provided his name and telephone number did not open the door to admitting everything the witness said to that officer, and in that the additional testimony could not reasonably be said to have been necessary to understanding the testimony that the officer had obtained the witness's name and telephone number, the testimony was cumulative and harmless beyond a reasonable doubt, given the overwhelming nature of the evidence in the case [390-391].

At a criminal trial, the judge did not abuse his discretion in declining to instruct the jury regarding a missing witness for the Commonwealth, where the evidence against the defendant was strong and the testimony from the witness likely would have been cumulative of other evidence [391-392]; further, the judge did not abuse his discretion in declining to instruct the jury on the inadequacies of the police investigation [392]; finally, the judge did not abuse his discretion in declining to reinstruct on reasonable doubt in response to a jury question, where the judge properly instructed the jury on reasonable doubt in his final charge [392-393].

COMPLAINT received and sworn to in the Dorchester Division of the Boston Municipal Court Department on October 26, 2010.

The case was tried before *Robert E. Baylor*, J.

*Patricia E. Muse (Daniel J. Procaccini* with her) for the defendant.

*Taylor Shutt (Donna Jalbert Patalano*, Assistant District Attorney, with her) for the Commonwealth.

HANLON, J. After a jury trial, the defendant, Christopher Doyle, was convicted of breaking into a depository in the nighttime with intent to commit a felony, possession of burglarious tools, and malicious destruction of property over $250.[1] On appeal, he contends that (1) the Commonwealth presented insufficient evidence to prove that the object of the breaking, an automated teller machine (ATM), was a functioning depository, or to prove that its destruction was malicious, (2) the admission of hearsay statements made by a nontestifying witness violated the defendant's confrontation rights under the Sixth Amendment to the United States Constitution, (3) the trial judge failed to give necessary instructions as requested on the issues of deficiencies in the police investigation and a missing witness, and (4) the trial judge abused his discretion when he refused the defendant's request that he reinstruct the jury on reasonable doubt when answering a jury question. We affirm the breaking into a depository and possession of burglarious tools convictions and reverse the malicious destruction of property conviction.

1. *Background.* The jury heard the following evidence. At 3:00 A.M. on October 26, 2010, the Boston police department received a call for a bank alarm tripped at the ATM in the vestibule of the Meetinghouse Hill Bank in the Dorchester section of Boston. When Officers Omar Cepeda and Eddy Pena arrived, they looked through the glass window of the bank and saw that the cover of the ATM was lifted. A man on a bicycle, later identified as Matthew Pickett, immediately approached them and pointed to the defendant "maybe 25 to 50 feet away" walking up the sidewalk carrying a large bag. When the officers approached the defendant on foot, he began to run; the officers

---

[1]The defendant was acquitted of resisting arrest.

then chased and caught him. After securing the defendant in the police cruiser, Officer Cepeda opened the defendant's duffle bag and saw several tools, including a yellow metal grinder that was still "extremely hot" to the touch.[2]

Cepeda then entered the bank vestibule and noticed "smoke on the air" and the "smell of the burn." He also observed that the cover on the ATM was up and that the door hinge was partially ground. Meanwhile, Cepeda's partner, Officer Pena, spoke further with Pickett.[3]

2. *Breaking into a depository.*[4] The defendant argues that the trial judge should have allowed his motion for a required finding of not guilty on the charge of breaking into a depository because, he alleges, the Commonwealth failed to prove that the ATM was a functioning depository. For support, he relies on an unpublished Michigan case to argue that specific evidence was required to demonstrate how an ATM functions in order to establish that the item was, in fact, a depository.[5]

"In reviewing the denial of the defendant's motions for required findings of not guilty, the 'question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' (emphasis in original). *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985), quoting *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979)." *Commonwealth* v. *Cordle*, 404 Mass. 733, 738 (1989). Here, the Commonwealth's evidence included three bank surveillance videos[6] and corroborating testimony from the two arresting officers. In addition, the president of the bank identified the

---

[2]The duffle bag also contained a flashlight, "crowbars, wedges, and shilfulls (phonetic), that look like a screwdriver kind of thing," gloves, and a ski mask.

[3]Pickett was not called as a witness at trial, and the Commonwealth's pretrial motion in limine requesting the admission of Pickett's statements to the officer was denied.

[4]"Whoever, in the night time, . . . attempts to or does break, burn, blow up or otherwise injures or destroys a safe, vault or other depository of money, bonds or other valuables in any building . . . with intent to commit a larceny . . . whether he succeeds or fails in the perpetration of such larceny . . . shall be punished . . . ." G. L. c. 266, § 16, as appearing in St. 1985, c. 312, § 1.

[5]See People *vs.* Ray, Mich. Ct. App., No. 273541 (Dec. 18, 2008).

[6]The first video shows the defendant in the ATM vestibule prying open the

video exhibits as surveillance tapes recorded in the area where the ATM was located. Finally, Officer Cepeda referred to the machine as "the ATM" and added that he was familiar with the bank because he used it for his personal banking. "I noticed the ATM which [was] located through a glass, so you can actually see from the street, the cover of the ATM was lifted up." The abbreviation "ATM" is a commonly used term for a machine that conducts banking transactions, including dispensing cash.[7] See, e.g., *Commonwealth* v. *Furr*, 454 Mass. 101, 102 (2009). "Depository" has been defined as "[a] place where one leaves money or valuables for safekeeping." Black's Law Dictionary 505 (9th ed. 2004).

After hearing all the evidence, a rational jury could have found that the machine, located in the bank vestibule and targeted by the defendant, was an ATM, that the ATM in question was a depository within the meaning of the statute, and that it was a place where something of value was left. Evaluating this evidence in combination with the defendant's possession of a recently used metal grinding tool, damage to the ATM door hinge, and smoke still lingering in the bank vestibule along with the odor of burnt metal, we are satisfied that the Commonwealth met its burden to prove the charge of breaking into a depository.

3. *Malicious destruction of property.*[8] The defendant next

---

ATM, lifting the cover, working on the hinge with a yellow grinder, and causing sparks to shoot from the work area. The second video shows a view of the street in front of the bank. Pickett bicycles past the bank and then stops in front of what appears to be the location of the ATM. The defendant is then shown leaving the bank with the black duffle bag and turning down a side street; a few seconds later, the police arrive and Pickett points toward the direction the defendant had walked. The third video is a view of the back parking lot behind the bank. The defendant is shown walking down the side street holding the black duffle bag. The police follow a few seconds later, walking, then running, toward the defendant. The police then return in the direction of their parked cruiser with the defendant in custody.

[7] The following is one definition of an "automated teller machine": "An unattended electronic machine . . . activated by a bank customer to obtain cash withdrawals and other banking services." American Heritage Dictionary 122 (4th ed. 2006).

[8] "Whoever destroys or injures the personal property . . . of another in any manner or by any means not particularly described or mentioned in this chapter shall, if such destruction is wilful and malicious, be punished . . . ." G. L. c. 266, § 127.

argues that the Commonwealth failed to prove malicious destruction of property over $250 because there was insufficient evidence to show malice and no evidence as to the actual cost of the damage done to the ATM machine. The Commonwealth responds that malice was proved by the "degree of force employed by the defendant as he pried open the ATM," and also that the jury could infer from the photographs in evidence that the damage to the ATM was in excess of $250.

To prove malicious destruction of property, the defendant's actions must be both "wilful" and "malicious." G. L. c. 266, § 127. "In addition to the intent to inflict injury to property, the crime requires a state of mind infused with cruelty, hostility or revenge." *Commonwealth* v. *Redmond,* 53 Mass. App. Ct. 1, 4 (2001). *Redmond* controls here; in that case, the defendant was arrested while apparently in the process of stealing computer equipment. In pursuit of that goal, he had ripped a security alarm from the wall, broken a window, and forcibly opened the front door of the office: "the lock was damaged, the door frame was gouged, and wood chips were on the floor. Inside the office, a second door, leading into a computer room, appeared kicked in and bore other indicia of a forcible entry, with gouge marks on the frame, a bent deadbolt lock, and more wood chips on the floor." *Id.* at 3. This court concluded that "[a]lthough clearly intended, such property damage was nothing more than 'the adventitious by-product of a wholly discrete criminal enterprise' (the theft of the computers) and was not 'gratuitous, excessive violence purposefully designed to intimidate and overpower,' . . . or destructive activities that were by design and hostile to the owner of the property." *Id.* at 5, quoting from *Commonwealth* v. *Wynn,* 42 Mass. App. Ct. 452, 456 (1997). See *Commonwealth* v. *Morris M.,* 70 Mass. App. Ct. 688 (2007) (destruction of property caused by driving a Jeep across the driving range of a golf course and smashing the car into a pole was not malicious because the juvenile was driving the vehicle in order to escape another who apparently intended to harm him). Compare *Commonwealth* v. *Gordon,* 82 Mass. App. Ct. 227, 233 (2012).

In the case before us, it is clear that the damage was done in an effort to steal from the ATM and not with "a state of mind

infused with cruelty, hostility or revenge." *Commonwealth* v. *Redmond, supra* at 4. Even viewed in the light most favorable to the Commonwealth, the evidence was not sufficient to establish the necessary element of malice.[9]

4. *Hearsay statements.* The defendant also argues that his right to confrontation was violated when verbal and nonverbal hearsay statements were admitted through the testimony of Officers Cepeda and Pena rather than by calling Pickett as a trial witness. The Commonwealth responds that testimony regarding Pickett's pointing was appropriately admitted because it demonstrated the officers' states of mind at the time of pursuit and arrest of the defendant; Pickett's later oral statements to Pena were admissible, the Commonwealth maintains, under the doctrine of verbal completeness.

a. *Pointing gesture.* Officer Cepeda testified, over objection, that when he and Officer Pena pulled up to the bank, a man unknown to him (later identified as Pickett) pointed to the other side of the street. When Cepeda looked in that direction, he saw "a male carrying a large bag [running] away from us." Cepeda identified the male as the defendant. The defendant argues that Cepeda's description of the act of pointing was inadmissible hearsay, offered to prove that the defendant was the person who had broken into the ATM. We disagree.

"[T]he hearsay rule forbids only the testimonial use of reported statements. It does not preclude the use of such statements for other valid purposes such as . . . the state of police knowledge which impelled the approach to the defendant." *Commonwealth* v. *LaVelle*, 414 Mass. 146, 155 (1993), quoting from *Commonwealth* v. *Miller*, 361 Mass. 644, 659 (1972). "This evidence was admitted as background for the 'state of police knowledge' and not for its truth. See *Commonwealth* v. *Rosario*, 430 Mass. 505, 508-510 (1999)." *Commonwealth* v. *Faust*, 81 Mass. App. Ct. 498, 503 (2012). In *Rosario*, the court noted that it had "explained that 'an arresting or investigating officer should not be put in the false position of seeming just to

---

[9]In light of this holding, we do not reach the issue whether the proof was sufficient to establish that the damage could be valued as more than $250. We note that the Commonwealth offered no evidence of the cost of repairing the ATM — not even through the testimony of the bank president.

have happened upon the scene; he should be allowed some explanation of his presence and conduct.' *Commonwealth* v. *Cohen*, [412 Mass. 375, 393 (1992)], quoting McCormick, Evidence § 249, at 734 (E. Cleary 3d ed. 1984). . . . [Because] [t]estimony of this kind carries a high probability of misuse, . . . [the court has] therefore permitted this evidence only through the testimony of a police officer who must testify only on the basis of his own knowledge. . . . Second, the testimony must be limited to the facts required to establish the officer's state of knowledge. Disclosure of the substance of the conversation ordinarily is not required . . . . Third, the police action or state of police knowledge must be relevant to an issue in the case." *Rosario, supra.* See Mass. G. Evid. § 801(c) (2012).

In this case, Cepeda's description of the pointing gesture meets every prong of that test. Cepeda observed the gesture itself; there was no conversation at all, and the gesture was relevant to explain why the police officers went after the defendant, instead of stopping to speak to Pickett. In addition, evidence of the pointing clearly was cumulative of the evidence in the video that was admitted without objection. We also reject the defendant's argument that testimony about the pointing gesture violated his Sixth Amendment right to confrontation, as the gesture was not offered for the purpose of proving that the defendant had committed the crime. Finally, even if the gesture was admitted in error, it was harmless beyond a reasonable doubt, as it duplicated other, overwhelming evidence. See *Commonwealth* v. *Galicia*, 447 Mass. 737, 748 (2006).

b. *Officer Pena's testimony about Pickett's statement.* The defendant called Pena as a witness and elicited testimony that, during their conversation after the defendant's arrest, Pickett identified himself and gave Pena his telephone number. The prosecutor was then permitted, on cross-examination, and over the defendant's objections, to question Pena as to Pickett's other statements during this same conversation. Pena testified that Pickett told him that he "saw [the defendant] inside of the bank . . . in front of the, ah, ATM with the, ah, a tool in his hand. . . . [W]hen we arrived, Mr. Pickett was on scene. He was telling us which way [the defendant] had gone." This testimony was admitted in error. Asking the officer if he had

obtained Pickett's name and telephone number did not open the door to admitting everything Pickett said to the police officer. The questions asked by the defense properly laid a foundation both for an argument that the police investigation and subsequent prosecution were flawed, because Pickett was not called as a witness, and for the defendant's later request for a missing witness instruction.

The Commonwealth argues that the testimony was admissible under the doctrine of verbal completeness. "Under the doctrine of verbal completeness, '[w]hen a party introduces a portion of a statement or writing in evidence,' a judge has the discretion to 'allow[] admission of other relevant portions of the same statement or writing which serve to "clarify the context" of the admitted portion.' *Commonwealth* v. *Carmona*, 428 Mass. 268, 272 (1998), quoting *Commonwealth* v. *Robles*, 423 Mass. 62, 69 (1996)." *Commonwealth* v. *Aviles*, 461 Mass. 60, 75 (2011). However, the court in *Aviles* emphasized that "[t]he doctrine of verbal completeness does not open the door for everything in a statement or document. . . . To be admitted, 'the additional portions of the statement must be . . . necessary to the understanding of the admitted statement.' *Commonwealth* v. *Eugene*, 438 Mass. 343, 350-351 (2003)." *Commonwealth* v. *Aviles*, *supra* at 75. See Mass. G. Evid. § 106 (2012). Here, the testimony elicited by the prosecutor on cross-examination cannot reasonably be said to have been necessary to understanding the testimony that the officer had obtained the witness's name and telephone number. On the other hand, the testimony added nothing to the Commonwealth's case. It was clearly cumulative and, given the overwhelming nature of the evidence, harmless beyond a reasonable doubt. See *Commonwealth* v. *Galicia*, 447 Mass. at 748.

5. *Jury instructions.* We address briefly the defendant's claims of error in the judge's instructions to the jury. First, he argues that the trial judge abused his discretion by not giving a "missing witness" instruction. "[W]hether to give a missing witness instruction is a decision that must be made on a case-by-case basis, in the discretion of the trial judge" and overturned "only if it was 'manifestly unreasonable.' " *Commonwealth* v. *Ivy*, 55 Mass. App. Ct. 851, 860 (2002), quoting from *Commonwealth*

v. *Thomas,* 429 Mass. 146, 151 (1999). See *Commonwealth* v. *Williams,* 450 Mass. 894, 901 (2008). ("There was no evidence that [the witness] was physically available to the Commonwealth, that it knew of his whereabouts, or that it deliberately was concealing his whereabouts"). In addition, as noted, the evidence against the defendant was strong and Pickett's testimony likely would have been cumulative of the video evidence and the officers' testimony. There was no abuse of discretion.

Second, the defendant challenges the judge's failure to give a *Bowden* instruction on the inadequacies of the police investigation. See *Commonwealth* v. *Bowden,* 379 Mass. 472, 485-486 (1980). "As [the court has] stated on many occasions, 'a judge is not required to instruct on the claimed inadequacy of a police investigation. "*Bowden* simply holds that a judge may not remove the issue from the jury's consideration." ' *Commonwealth* v. *Boateng,* 438 Mass. 498, 507 (2003), quoting *Commonwealth* v. *O'Brien,* 432 Mass. 578, 590 (2000). See *Commonwealth* v. *Avila,* 454 Mass. [at] 767 . . . ; *Commonwealth* v. *Williams,* 439 Mass. 678, 687 (2003)." *Commonwealth* v. *Lao,* 460 Mass. 12, 23 (2011).[10]

Finally, the defendant argues that the judge erroneously failed to reinstruct on reasonable doubt in response to a jury question, "[C]an you provide a criteria for guilty or not guilty?" Over objection, the judge asked the jury for further clarification.[11] Defense counsel asked that the *Webster* charge on reasonable doubt, see *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850),

---

[10]The defendant also argues that the judge, by sustaining objections to two of his questions (i.e., whether Officer Pena had inquired of the Registry of Motor Vehicles or the board of probation to determine whether Pickett had a criminal record) foreclosed his ability to challenge the adequacy of the investigation. A review of the entire record reveals that the defendant was permitted to question the officer extensively about the steps taken and not taken by the police and also to argue forcefully to the jury that the investigation was inadequate.

[11]Specifically, the judge said, "Now you didn't indicate which charges that you . . . have a question about. There were four charges. You have a verdict slip and I would ask that you look at the verdict slip and you indicate here on what particular charges that you wish. If it's all four then say, 'all four.' If it's just one, or, or two, or just indicate which ones so that I can go back. Or, if there is anything else that you wish to have, to be instructed on. But I need you to point that out to me so that I can do that and not do the whole thing, okay?"

be given a second time and the judge refused, noting that, in his experience, when a jury wanted further instruction on reasonable doubt, they usually made that clear. We see no error. The judge properly instructed the jury on reasonable doubt in his final charge to the jury, and the defendant did not object. " 'The proper response to a jury question must remain within the discretion of the trial judge, who has observed the evidence and the jury firsthand and can tailor supplemental instructions accordingly.' *Commonwealth* v. *Waite*, 422 Mass. 792, 807 n.11 (1996). The judge's discretion to formulate a response is broad. *Id.*" *Commonwealth* v. *Monteagudo*, 427 Mass. 484, 488 (1998). In addition, a judge "risks much mischief by going beyond the facial content of a deliberating jury's question in an effort to provide assistance on a subject that he or she infers is 'really' troubling them." *Commonwealth* v. *Murphy*, 57 Mass. App. Ct. 586, 593 (2003). See Mass. G. Evid. § 1111 (2012). We see no error and certainly no abuse of discretion.

For the foregoing reasons, on the charges of breaking into a depository in the nighttime with intent to commit a felony and possession of burglarious tools, the judgments are affirmed. On the charge of malicious destruction of property, the judgment is reversed, the finding is set aside, and judgment shall enter for the defendant.

*So ordered.*