NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1140

COMMONWEALTH

vs.

MELIK HARRISON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In April 2023, the defendant was charged in the District Court with armed burglary, G. L. c. 266, § 14 (count 1); putting a person in fear for the purpose of stealing from a safe, G. L. c. 265, § 21 (count 2); larceny over $1,200, G. L. c. 266, § 30 (1) (count 3); three counts of assault with a dangerous weapon, G. L. c. 265, § 15B (b) (counts 4, 8, and 9); two counts of larceny from a person, G. L. c. 266, § 25 (b) (counts 5 and 10); malicious destruction of property over $1,200, G. L. c. 266, § 127 (count 6); breaking and entering into a vehicle at night to commit a felony, G. L. c. 266, § 16 (count 7); and home invasion, G. L. c. 265, § 18C (count 11). After a trial, the jury convicted the defendant of count 6, malicious destruction

of property over $1,200.[1]  Because we are satisfied that the evidence was sufficient to prove the defendant's guilt on count 6 and that any abuse of discretion in the admission of the evidence the defendant challenges on appeal did not amount to prejudicial error, we affirm.

Discussion.  1.  Sufficiency of the evidence.  First, the defendant challenges the judge's denial of his motions for a required finding of not guilty at the close of the Commonwealth's evidence.[2]  In evaluating the defendant's sufficiency claim, we ask whether the trial evidence, viewed in the light most favorable to the Commonwealth, would permit a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.  See Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979).  We bear in mind that guilt may be established by circumstantial evidence and that inferences drawn from the trial evidence "need only be reasonable and

---

[1] Before trial, and at the Commonwealth's request, a judge dismissed counts 1, 2, and 11.  The trial judge dismissed counts 3, 4, and 7 without objection.  The trial judge also found the evidence insufficient to sustain a conviction on count 5, thus requiring a finding of not guilty, although we note that the docket entry for that charge reflects that it was "dismissed." The jury acquitted the defendant of counts 8, 9, and 10.

[2] As was his right, the defendant did not present any evidence at trial, and so there was no occasion for him to renew his motion for a required finding at the close of all the evidence.

2

possible and need not be necessary or inescapable." Commonwealth v. West, 487 Mass. 794, 800 (2021), quoting Commonwealth v. Casale, 381 Mass. 167, 173 (1980).

Here, the Commonwealth presented evidence sufficient to permit the finding beyond a reasonable doubt that the defendant was one of two men who "knowingly participated in the commission of the crime charged" -- in this case, malicious destruction of property over $1,200 -- "and that the defendant had or shared the required criminal intent." Commonwealth v. Zanetti, 454 Mass. 449, 467 (2009). See Commonwealth v. Netto, 438 Mass. 686, 700-701 (2003) ("To succeed on a joint venture theory, the Commonwealth need not prove the identity of the actual perpetrator . . ."). See Commonwealth v. Redmond, 53 Mass. App. Ct. 1, 3-4 (2001) (crime of "[w]ilful and malicious destruction of property" requires proof that defendant acted out of "cruelty, hostility or revenge"). The jury could have credited the Commonwealth's evidence that the defendant borrowed a key fob that allowed him to access the apartment complex. By comparing the apartment complex's records of when that key fob was used with recordings made by apartment surveillance cameras on the same dates and times, the police were able to capture still images of the defendant using the fob to enter the building on March 7 and 11, 2023. The jury saw those photographs and could have compared them to the defendant, who

was present at the trial, and to other images taken from surveillance recordings made when two men, matching the description of the suspects, used the same key fob to enter the complex around the time of the crime.  In the photographs taken on the night of the crime, the two men had their faces covered, but based on the loan of the key fob, the records of usage of the key fob, and all the still photographs, the jury could have found that the smaller of the two intruders was the defendant. See Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007), and 460 Mass. 12 (2011) ("evidence of a defendant's guilt may be primarily or entirely circumstantial"); Commonwealth v. Pardee, 105 Mass. App. Ct. 496, 503-504 (2025) (sufficiency of evidence, including evidence of identity, determined on consideration of "totality of the evidence").  Cf. Commonwealth v. Davis, 487 Mass. 448, 463-464 (2021) (taken together, evidence of defendant's location established by global positioning system monitor, witness's description of shooter, and video recording of gunman fleeing scene were sufficient to establish that defendant was shooter, even where video recording did not clearly show shooter's face).

As to the defendant's malicious intent and his role in the damage to the victim's apartment door, the jury could have found that shortly after the defendant and his companion entered the building, they sought entry into an occupied apartment and, when

4

they were refused, repeatedly kicked the door until it broke. Witnesses testified that the suspects then pushed a gun through the opening and came into the apartment where they held the occupants at gunpoint and terrorized them over the course of forty-five minutes. Where the jury could have concluded that the damage to the door was part of the intruders' attempt to intimidate and overpower the apartment's occupants, and not merely to gain entry to the apartment for the purpose of stealing, the evidence of the defendant's malicious intent was sufficient.[3] Cf. Redmond, 53 Mass. App. Ct. at 5, quoting Commonwealth v. Wynn, 42 Mass. App. Ct. 452, 456 (1997) (destruction of doors was merely means to end goal of theft "and was not 'gratuitous, excessive violence purposefully designed to intimidate and overpower'"). "It was for the fact finder . . . to determine whether the defendant's actions were malicious." Commonwealth v. Gordon, 82 Mass. App. Ct. 227, 233 (2012). See Commonwealth v. Chambers, 90 Mass. App. Ct. 137, 144-145 (2016) (evidence of malice sufficient where defendant kicked victim's door because she was "enraged" by location of vehicle in

---

[3] It is noteworthy that none of the cases on which the defendant relies to support this aspect of his argument involve damage done to gain access to an occupied dwelling. See Commonwealth v. Doyle, 83 Mass. App. Ct. 384, 388-389 (2013), S.C., 472 Mass. 1002 (2015) (breaking into automated teller machine); Redmond, 53 Mass. App. Ct. at 2-3 (early morning breaking and entry into office building).

5

driveway); Commonwealth v. Domingue, 18 Mass. App. Ct. 987, 989–990 (1984) (sufficient malice demonstrated by defendant's firing handgun into bar to frighten bartender); Commonwealth v. Peruzzi, 15 Mass. App. Ct. 437, 443 (1983) (malicious destruction of property requires "state of mind of cruelty, hostility or revenge").

Even without direct evidence of who broke the door, the jury could have found that the defendant's presence at the door when it was kicked in "was not a chance occurrence," Commonwealth v. Pope, 15 Mass. App. Ct. 505, 510-511 (1983), and that the defendant was at least "present, able and ready to assist" in doing the damage. Commonwealth v. Pasteur, 66 Mass. App. Ct. 812, 819 (2006). As such, the evidence was sufficient to establish the defendant's guilt. See Commonwealth v. McCray, 93 Mass. App. Ct. 835, 843 (2018).

2. Admissibility of photographic evidence. As we note above, the judge admitted in evidence still photographs derived from the apartment complex's March 7 and March 11 surveillance footage. He did so over defense counsel's objection on the first day of trial[4] that, although she received still photographs

---

[4] Defense counsel also raised challenges to the March 7 and March 11 photographs based on her determination that it was not possible to identify the person depicted in them. The defendant does not raise this argument on appeal.

derived from the video surveillance footage, the underlying videotapes that the prosecutor provided to her would not play, an argument the defendant frames on appeal as a Brady violation. See Brady v. Maryland, 373 U.S. 83, 87 (1963).

> "To establish a Brady violation, a defendant must show that (1) material information was in the possession of the prosecutor or those police who are participants in the investigation and presentation of the case; (2) the information tended to exculpate him; and (3) the prosecutor failed to disclose the evidence. . . .  The so-called Brady obligation is one of disclosure; it imposes no obligation on the prosecution to gather evidence or conduct additional investigation."  (Quotation and citations omitted.)

Commonwealth v. Caillot, 454 Mass. 245, 261-262 (2009), cert. denied, 559 U.S. 948 (2010).  "Evidence is exculpatory if it 'provides some significant aid to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of the events, or challenges the credibility of a key prosecution witness.'"  Commonwealth v. Watkins, 473 Mass. 222, 231 (2015), quoting Commonwealth v. Daniels, 445 Mass. 392, 401-402 (2005).  See Commonwealth v. Cintron, 438 Mass. 779, 784 (2003) ("A defendant who seeks relief from the loss or destruction of potentially exculpatory evidence has the initial burden to establish a reasonable possibility . . . that access . . . would have produced evidence favorable to his cause" [quotations and citations omitted]).  On review, we discern no constitutional violation stemming from the

unplayable videotapes nor abuse of discretion in the judge's decision to admit the photographs.

The evidence presented at trial established that the still photographs reflected the specific dates and times on which the borrowed key fob was used within the footage obtained from the motion-activated cameras.[5]  Given the specificity of the relevant timeframes -- that is, the times at which the borrowed fob was used -- we see little, if any, likelihood that the video footage featuring dates and times other than those for which the stills were taken would have shown potentially exculpatory evidence of "other tenants and visitors entering or exiting the apartment complex."[6]  Where the requirements for proving a Brady violation are conjunctive, see Caillot, 454 Mass. at 261-262, the defendant's failure to show that the video recordings in the Commonwealth's control were exculpatory, and the defendant's resulting failure to show that he was prejudiced by his inability to view them, is fatal to his challenge stemming from

---

[5] The police also had a photograph from May 19, 2023, that was unconnected to the use of the key fob; defense counsel filed a motion in limine to exclude that photograph.  The judge excluded that photograph as not relevant, and it is not at issue in this appeal.

[6] The only videotape that defense counsel "was able to play was the one that came from the date of the actual offense," so she had access to the video footage that may have shown people other than the defendant entering or leaving around the time of the crime.

the Commonwealth's failure to provide legible copies of the video recordings in its control.

3. _Other evidentiary challenges_. a. _Lay opinion testimony about photographs_. Over the defendant's objection, the prosecutor was permitted to show his witness, a police officer, two still photographs -- one showing a lone man entering the apartment complex on March 11, 2023, wearing a black hooded sweatshirt with a zipper and with his face visible, and the second showing the two intruders on the night of the crime -- and then to elicit both the witness's description of what the intruders were wearing and the witness's opinion that one of them was wearing the same sweatshirt that appeared on the person in the March 11 photograph. We agree that where the officer had no greater familiarity with the defendant than the jury did, and where his testimony would not enable the jury to more reliably determine whether any of the photographs in evidence depicted the defendant, his testimony about the photographs should not have been admitted. See Commonwealth v. Gomez, 495 Mass. 688, 696 (2025) ("The identification of an individual from a photograph or video image is an expression of lay opinion"); Commonwealth v. Grier, 490 Mass. 455, 476 (2022) ("Where the jury are capable of viewing video or photographic evidence and drawing their own conclusions regarding what is depicted, a lay witness's testimony about the content of the

9

video or photographs is admissible only if it would assist the jury in reaching more reliable conclusions").  See also Commonwealth v. Vacher, 469 Mass. 425, 441-442 (2014).  We are not, however, persuaded that the error was prejudicial.  See Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994) (prejudicial error standard); Commonwealth v. Connolly, 91 Mass. App. Ct. 580, 585, 593 (2017) (admission of lay opinion testimony is reviewed for abuse of discretion and, where objection was preserved, prejudice to defendant).  Given the substantial evidence tying the defendant to the crime through his use of the borrowed key fob and the ability of jurors to view the photographs and make their own determination as to what they could see, we conclude that the officer's testimony about his interpretation of the still photographs was likely to have had "but very slight effect" on the jury's verdict, and we are not persuaded that the error requires us to disturb the judgment.  See Flebotte, supra, quoting Peruzzi, 15 Mass. App. Ct. at 445.  Contrast Grier, 490 Mass. at 477-478 (assuming error in admission of lay opinion about photographs but discerning no prejudice where witness did not "actually identify[] the defendant as the individual seen in them"), with Commonwealth v. Wardsworth, 482 Mass. 454, 476-477 (2019) (reversing conviction where improper lay opinion was "extensive" and permeated prosecutor's closing argument).

b.  Evidence of county employee's identification of

defendant.  The judge allowed the same officer to testify on

direct examination that he showed the still photographs to a

named county employee who was quickly "able to identify the

person in those photographs."[7]  The officer's testimony did not

include the name of the person whom the county employee

identified.  Assuming without deciding that the judge erred in

permitting the officer to testify to the fact that the county

official recognized the person in the photograph, we discern no

prejudice caused by that testimony.  See Flebotte, 417 Mass. at

353 (prejudicial error standard).  The officer was not asked

whom the county employee recognized the person in the photograph

as, and as discussed below, the county employee did not give

testimony regarding the person he identified.[8]  Where the judge's

---

[7] Defense counsel objected to the question, "And when you showed [the county employee] these photographs, was he able to identify the person in those photographs?"  The officer was permitted to answer, "He was."  Over objection, the officer was allowed to testify that the county employee made the identification "within 10 [to] 15 seconds."

[8] Because neither the officer's testimony about the county employee's recognition of the person depicted in the still photograph nor the county employee's own testimony included an identification of the defendant, we do not agree with the defendant that his constitutional rights were infringed here, and we therefore do not rely on the constitutional standard of review requiring determination whether any error was harmless beyond a reasonable doubt.  Cf. Commonwealth v. Vardinski, 438 Mass. 444, 449-450 (2003) (concluding that right to cross-examine in one-witness identification case was closely linked to

11

instructions to the jury included a prohibition on speculating about matters outside the trial evidence, we discern no prejudice stemming from either the officer's testimony about the county employee's identification or the county employee's own testimony. See Gomez, 495 Mass. at 697 (no error in admission of compilation videotape where no witness identified defendant as shooter); Commonwealth v. Gonzalez, 473 Mass. 415, 427 (2015) (jurors are presumed to follow judge's instructions on law).

c. County employee's testimony. The defendant moved in limine to preclude the county employee -- mentioned in the officer's testimony -- from testifying. The Commonwealth intended to call the county employee to identify the defendant based on the employee's past professional familiarity with him. See Commonwealth v. Pleas, 49 Mass. App. Ct. 321, 325-327 (2000). We discern no abuse of discretion in the judge's order denying the defendant's motion in limine. See id. Even if we were to conclude otherwise, we would discern no prejudice stemming from the judge's decision because the county employee was excused after testifying only to his name, age, and employer. Whatever the prosecutor's intentions were in calling the county employee, that witness did not make any

constitutional right to put on defense and, therefore, any error was thus reversible unless harmless beyond reasonable doubt).

12

identification of the defendant.  Cf. Gomez, 495 Mass. at 697.

As we have already discussed, the judge instructed the jury that

they were not to engage in any speculation outside the evidence

presented at trial.  Commonwealth v. Donahue, 430 Mass. 710, 718

(2000) (proper jury instructions minimize risk of prejudice).

Lastly, the prosecutor did not mention the county employee in

either his opening statement or his closing argument.

4.  Commonwealth's argument.  "The proper function of an

opening is to outline in a general way the nature of the case

which the counsel expects to be able to prove or support by

evidence" (citation omitted).  Commonwealth v. Sylvia, 456 Mass.

182, 188 (2010).  "The prosecutor's expectation must be

'reasonable and grounded in good faith.'"  Id., quoting

Commonwealth v. Fazio, 375 Mass. 451, 456 (1978).  In a closing

argument, "[t]he prosecutor is entitled to argue the evidence

and fair inferences to be drawn therefrom."  Commonwealth v.

Paradise, 405 Mass. 141, 152 (1989).  We evaluate the

prosecutor's opening statement and closing argument in their

entirety and in light of both the judge's instructions to the

jury and the evidence introduced at trial.  See Davis, 487 Mass.

at 468-469 (opening statements); Commonwealth v. Lamrini, 392

Mass. 427, 432 (1984) (closing arguments).  In his brief, the

defendant contends that in the prosecutor's opening statement

and closing argument the prosecutor "improperly suggested the

13

jury identify [the defendant] from grainy, low-resolution surveillance photographs," and in doing so, "told the jury that it was [the defendant] in the photos."  The defendant did not raise these objections at trial, so to the extent that we discern error, our review is for a substantial risk of a miscarriage of justice.  See Commonwealth v. Marquetty, 416 Mass. 445, 450 (1993).

We discern no error here.  We do not agree that in his opening statement the prosecutor "told the jury that it was [the defendant] in the photos."  Instead, we read the opening statement as a proper description of the evidence the prosecutor expected to present to the jury and the conclusions he anticipated the jurors would be able to draw from that evidence. See Gomez, 495 Mass. at 698-699.

The prosecutor's closing argument was likewise within permissible bounds.  Unlike in Davis, 487 Mass. at 469, the resolution of the March 7 and March 11 photographs was adequate to allow the jury to discern at least some of the subject's facial features and to permit the jury to compare the photographs to the defendant, who was present at the trial.  Cf. id. ("The video is not high enough resolution and is taken from too far away to be able to discern any features of the shooter's face").  There was nothing improper in the prosecutor's suggesting that the jury make that comparison and draw the

14

conclusion that the photographs depicted the defendant.  See Commonwealth v. Ferreira, 381 Mass. 306, 316 (1980).

Judgment affirmed.

By the Court (Hand, Hodgens & Tan, JJ.[9]),

Clerk

Entered:  December 19, 2025.

---

[9] The panelists are listed in order of seniority.